[No. 33102. Department Two. July 28, 1955.]

*In the Matter of the Appeal of* DONALD T. COATES *from an Order of the County Superintendent of Schools of Benton County.*

THE BOARD OF DIRECTORS OF KENNEWICK SCHOOL DISTRICT No. 17, *Respondent,* v. DONALD T. COATES, *Appellant.*[1]

· *Edward B. Critchlow,* for appellant.

*Fulk & Leeper,* for respondent.

*The Attorney General* and *Michael Alfieri, Assistant, amici curiae.*

ROSELLINI, J.—Donald T. Coates, the appellant, was employed by the board of directors of Kennewick school district No. 17 of Benton county, Washington, to serve for the school year 1952-53 as principal of the Kennewick junior high school. He was discharged on April 13, 1953, for "gross insubordination and unprofessional conduct" occurring on the night of March 30, 1953, in the office of the superintendent of schools. The action of the board was appealed to the county superintendent, as provided by Rem. Rev. Stat.,

[1]Reported in 287 P. (2d) 102.

§§ 5065, 5066 [*cf.* RCW 28.88.020, 050], who found that the acts complained of justified the appellant's dismissal.

A further appeal was taken to the superintendent of public instruction, referred to herein as the state superintendent, in accordance with the provisions of statute. Upon a review of the record, the state superintendent found that the appellant's conduct was provoked by the members of the respondent board and occurred outside the scope of employment, and that his acts were not such as to constitute grounds for summary dismissal. She held that the action of the board in discharging him amounted to a breach of contract and that appellant was entitled to the balance of the salary due him under the agreement.

On certiorari to the superior court of Thurston county, the state superintendent's order was reversed and the order of the county superintendent reinstated, based upon a determination that the latter's findings were substantiated by the evidence. While this may be true, it does not answer the question before the superior court: Was the determination *under review,* that of the state superintendent, clearly against the weight of the evidence? Appellant, in assigning error to the court's conclusions, contends that it was not.

Procedural objections raised by the respondent are identical to those which were urged in *In re Black, ante* p. 42, 287 P. (2d) 96, and are answered by our decision there. As in that case, we have the record before us in the same form in which it was reviewed by the superior court, and the questions raised in that court may be considered here on the merits.

The accounts given by witnesses to the events of the evening of March 30, 1953, vary only as to details. It appears that at the meeting of the board of directors, attended by approximately two hundred patrons of the district, including the appellant, the superintendent of schools was suspended after the reading of a rather strongly-worded motion expressing "grave doubts" as to his integrity. The board ordered the locks changed on the doors to the superintendent's office and voted to change the name of the high school, which

had borne the name of the superintendent. After the meeting, the appellant entered the superintendent's office, where the latter was allegedly gathering together his personal effects. Several persons were present in the room at the time the appellant entered or during the course of events which followed. They included three board members, the newly-appointed business manager, a representative from the sheriff's office, and the wife of one of the board members, who, according to the appellant, remarked audibly that it was about time they were "getting rid of the crooks."

Appellant began to pace the floor, muttering his opinion of the tactics of the newly-elected board members. He condemned the board vigorously and vehemently, terming its actions "communistic" or "black shirt" and "a purge." He accosted the publisher of one of the local newspapers, who was also a newly-elected school-board member. The evidence is in dispute as to whether he tapped the director on the chest or shook his finger at him. There is testimony that he said "Don't print my name in your —— ——— dirty sheet!" The publisher asked him to leave the room, and the superintendent suggested that he calm down. When appellant left the building, he took with him an envelope which the superintendent handed either to him or to his wife, and which they returned later that evening upon the advice of an attorney.

The gross insubordination and unprofessional conduct of which the board of directors complained were the insolent language used and the removing of the envelope. We do not see how the latter act comes under either heading. The superintendent had stated that he was gathering together his personal effects, and there is no evidence that appellant had reason to know the envelope contained anything else.

" 'Unprovoked insolence or disrespect on the part of the employee toward the employer or the latter's representative may afford ground for the discharge or dismissal of the employee prior to the conclusion of the term of employment.' 35 Am. Jur. 480, § 48." *Haag v. Revell,* 28 Wn. (2d) 883, 184 P. (2d) 442.

Provocation is defined in Funk & Wagnall's standard dictionary as "an action or mode of conduct that excites resentment or vindictive feeling; a cause of anger."

Whether there was such provocation or reasonable cause for the appellant's disrespectful conduct was a question for the administrative officers who were the triers of the facts. The county superintendent made no express finding on this point. The state superintendent found that provocation existed. We held in *In re Black, supra*, that she is entitled to make findings of fact on matters which she finds relevant to the disposition of the cause, at least where the facts found by her are not contrary to those found by the county superintendent upon conflicting testimony.

There was no real conflict in the evidence relating to provocation. The appellant testified that his name had been used disparagingly in an article appearing in an issue of the newspaper published by one of the directors. Specifically, he was described as sitting "smugly" outside the door of the library during an allegedly secret meeting of the board, the implication being that he was privy to the secret arrangement. The accusation was untrue, he said. The use of the term "smugly" kindled his resentment, which continued to smoulder throughout the school board election campaign and was fanned into flame by the events of the night of March 30th.

Although she testified at the hearing, the board member's wife who was alleged to have called the members of the ousted administration "crooks" did not deny that she had made the statement attributed to her by appellant. While her statement, of course, is not chargeable to the board members, it appears that they expressed no disapproval of it, and it is indicative of the atmosphere prevailing at the time and place of appellant's misconduct.

The manner in which the meeting of March 30th was conducted was reasonably calculated to arouse resentment in the partisans of the superintendent. The county superintendent's appraisal of it, as contained in her decision on the appeal of Black, is not essentially different from that of

the appellant. Her choice of words, however, was more conservative:

"The hearing on the appeal of Mr. Black discloses, unfortunately, that he was suspended without the courtesy of any notice whatsoever. As set forth in the complaint and testimony, he was directed at once to refrain from entering onto school premises or exercising any authority as school superintendent; and to make sure that the order was complied with the locks were changed on the doors leading to the superintendent's office. Although nothing in the law prohibits it, *this manner of procedure manifestly is unworthy of men entrusted with the responsibility of upholding democratic practices* and good educational standards." (Italics ours.)

■ Appellant testified that he attended the meeting as a citizen, taxpayer, and parent. As such, it is not surprising that he became incensed. While we do not condone the language in which he expressed his disapproval or appreciate the wisdom of it, we do not think it could be justly complained of by the publisher, at least, upon whose motion appellant was suspended. An article and an editorial taken from his newspaper were in evidence. To describe these writings as anything less than inflammatory would do them a grave injustice. We quote a brief excerpt:

"A crystal clear explanation of these unscholarly and dictatorial actions is due the public by the Kennewick school superintendent. Perhaps he will give one when he is through braying like a Missouri mule knee-deep in clover."

Teachers are required to exercise a high degree of patience and self-control when dealing with their youthful charges; but in their relations with adults, including school-board members, they should be judged by the ordinary standards of civility applicable to the particular relationship. If sufficiently provoked, any person may momentarily lose his self-control, and his conduct must be judged accordingly.

There was sufficient evidence to support the state superintendent's finding that appellant's conduct was provoked, and was therefore excusable.

Since provocation will excuse the insolence of an employee, it is unnecessary to decide whether the state superintendent was correct in deciding that because appellant's

acts were done in his capacity as a private citizen, they did not constitute cause for his dismissal.

The judgment is reversed, and the cause is remanded to the superior court with direction to reinstate the order of the state superintendent.

HAMLEY, C. J., MALLERY, HILL, and WEAVER, JJ., concur.

---

September 22, 1955.  Petition for rehearing denied.